UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KURT KANAM**,

                Plaintiff,

          v.                  Case No. 20-cv-123 (CRC)

**OFFICE OF THE SECRETARY OF EDUCATION**, *et al.*,

                Defendants.

## MEMORANDUM OPINION

Michigan State University law professor Matthew Fletcher regularly takes to the Indian law blog "Turtle Talk" to expose litigants whom he suspects of masquerading as tribal members. A frequent target of his posts is the *pro se* plaintiff in this case, Kurt Kanam. No doubt displeased with the uninvited notoriety, Kanam sued Professor Fletcher under the Civil Rights Act of 1964 for engaging in "racially inflammatory hate speech." And not content to stop there, Kanam added as defendants several entities that he insists have enabled or endorsed Fletcher's reportage. These additional defendants include the Board of Trustees of the University of Michigan Law School (which Kanam alleges operates the blog); the Office of the United States Secretary of Education (which provides federal education funding to the State of Michigan); the Office of the Governor of the State of the Michigan (which distributes federal funds to the State's public universities); and the Michigan State Bar Association (to which Fletcher allegedly belongs).

Before the Court are motions to dismiss filed by the Secretary of Education and Michigan State Bar. Finding both immune from suit, the Court will grant the motions. The remaining defendants appear from the docket not to have been served in the six months since Kanam filed

suit.  The Court will separately issue an Order to Show Cause why the case should not be dismissed as to those defendants as well for failure to effect service of process.

## I. Background

In 2013, the U.S. District Court for the District of Alaska permanently enjoined Mr. Kanam from prosecuting a lawsuit in a purported tribal court.  Koniag, Inc. v. Kanam, No. 12-cv-77, 2013 WL 11311346, at *2 (D. Alaska July 29, 2013).  Professor Fletcher, who teaches Indian law, authored several blog posts about that litigation and others that referred to Kanam as a "fake Indian."  See, e.g., Matthew L.M. Fletcher, Ninth Circuit Dismisses Appeal of Fake Indians and Fake Indian Court, TURTLE TALK (Aug. 26, 2015), https://turtletalk.blog/2015/08/26/ninth-circuit-dismisses-appeal-of-fake-indians-and-fake-indian-court; Matthew L.M. Fletcher, Oklahoma Company Sues Kurt Kanam/Kurt Weinreich (Fake Indian "Judge"), TURTLE TALK (Jan. 29, 2014), https://turtletalk.blog/2014/01/29/oklahoma-company-sues-kurt-kanamkurt-weinreich-fake-indian-judge.  Taking umbrage, Kanam filed this lawsuit.  He complains that Professor Fletcher's posts constitute "racially defamatory hate speech" in violation of the "1963 Civil Rights Act" and "28 USC 181."[1]  Compl. at 2–3; id. Att. A (screenshots of the offending posts).  He alleges that the "State of Michigan University School of Law" has violated the Act as well by employing Fletcher and "allowing the operation of" the Turtle Talk blog.[2]  Id. at 1–2.

---

[1] As the Secretary and the State Bar point out, there is no "Civil Rights Act of 1963" or "28 U.S.C. § 181."  See Sec'y of Educ. Mot. Dismiss 1; Mich. St. Bar Ass'n Mot. Dismiss 2.  However, construing this *pro se* complaint liberally, the Court will assume Kanam means the Civil Rights Act of 1964 (the "Act"), specifically Title VI, and 42 U.S.C. § 1983, which he cites on the civil cover sheet albeit with the incorrect volume number.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (explaining that *pro se* pleadings "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

[2] Kanam has sued the Trustees of the University of Michigan Law School, but it appears from a cursory Google search that Professor Fletcher teaches at Michigan State University

Kanam also seeks to require the U.S. Secretary of Education to fulfill her "duty to enforce the [Act]" by "withhold[ing] all future discretionary funding from the State of Michigan due to Fletcher's racially defamatory statements." Id. at 2–4.  Finally, he alleges that the Michigan Bar Association has "endorsed" Fletcher's speech by allowing his continued membership, also in violation of the Act.  Id. at 3.

The Michigan Bar Association and the Secretary of Education have each moved to dismiss the claims against them.  The Bar Association argues (1) that it is immune from suit under the Eleventh Amendment, (2) that the Court lacks personal jurisdiction over it, (3) that the complaint fails to state a claim, and (4) that it was not properly served.  The Secretary of Education contends that the suit is barred by sovereign immunity and that the complaint fails to state a claim against her in any event.  The Court concludes that sovereign immunity precludes this action against both the Bar Association—as an arm of the State of Michigan—and the Secretary of Education.  It need not reach the other grounds for dismissal.

## II. Legal Standards

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of establishing, by a preponderance the evidence, that the court has jurisdiction to hear the claims.  Whiteru v. Wash. Metro. Area Transit Auth., 258 F. Supp. 3d 175, 182 (D.D.C. 2017) (citing Lujan v. Defs. Of Wildlife, 504 U.S. 555, 561 (1992)).  Although the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged," Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)

---

College of Law.  Regardless, it is unnecessary to decide this factual inconsistency to resolve the present motions.

(internal citations omitted), a court ruling on a 12(b)(1) motion should pay "closer scrutiny" to the factual allegations and may look to documents outside the complaint to determine if jurisdiction exists, Delta Air Lines Inc. v. Export-Import Bank of U.S., 85 F. Supp. 3d 250, 259 (D.D.C. 2015).

### III. Analysis

#### A. Michigan State Bar Association

The Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  Eleventh Amendment immunity extends to the departments and agencies of the States.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Therefore, if the Michigan State Bar Association is a department or agency of the state, it is immune, and the Court must dismiss the action against it because "there is no indication that Congress has abrogated, or the state waived, sovereign immunity towards suits of this kind." Citizens Alert Regarding Env't v. EPA, 102 F. App'x 167, 169 (D.C. Cir. 2004).

Neither the Supreme Court nor the D.C. Circuit has laid out a precise test for determining whether an entity is a department or agency of a state, but each has offered guidance.  The Supreme Court has emphasized that the primary consideration should be whether any money judgment would come out of the state treasury.  Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994) ("[T]he impetus for the Eleventh Amendment [was] the prevention of federal-court judgments that must be paid out of a State's treasury.  Accordingly, Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations." (internal citations omitted)).  But the Supreme Court has also

indicated that lower courts should consider whether the suit would implicate the dignity of the state. Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 760 (2002) ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."). As a leading treatise summarizes: "Taken together, then, the [Supreme] Court has concluded that Eleventh Amendment immunity serves two goals. First, it preserves the state fisc. Second, it protects the dignity of the state." 13 C. Wright & A. Miller, Federal Practice & Procedure: Jurisdiction § 3524.2 (3d ed.). The D.C. Circuit, for its part, has noted that "sovereign immunity attaches only to entities that are functionally equivalent to states (often called 'arms of the state') or when, despite procedural technicalities, the suit effectively operates against the state as the real party in interest." City of Oakland ex rel. Bd. of Port Comm'rs v. Fed. Mar. Comm'n, 724 F.3d 224, 227 (D.C. Cir. 2013) (internal citations omitted). "These kinds of suits may offend the state's dignity or assault its solvency no less than if the state were itself the named defendant." Id.

With these considerations in mind, the Court concludes that the Michigan State Bar is immune from suit. The Sixth Circuit's opinion in Dubuc v. Michigan Board of Law Examiners, 342 F.3d 610 (6th Cir. 2003) explains why. Even without evidence of "whether the State of Michigan would be ultimately responsible for any monetary judgment against . . . the Bar," the Sixth Circuit found that the other factors "weigh in favor of finding . . . the Bar immune," namely "how state law defines the entity and the degree of control the state maintains over the entity." Dubuc, 342 F.3d at 615. Under Michigan law, the Michigan Supreme Court "*has the power* to provide for the organization, government, and membership of the State Bar of Michigan, and *to adopt rules and regulations concerning the conduct and activities of the state bar of Michigan and its members*, the schedule of membership dues therein, *the discipline,*

5

*suspension, and disbarment of its members for misconduct*, and the investigation and examination of applicants for admission to the bar." M.C.L.A. § 600.904 (emphasis added). Plainly, the State—through its Supreme Court—maintains extensive control over how the Bar Association manages its members.

Moreover, Kanam has sued the Bar Association for its purported inaction in the face of a member's alleged misconduct. Compl. at 2–3. When it comes to regulating the conduct of its members, however, the Bar Association is "merely [an] extension[] of the Michigan Supreme Court." Dubuc, 342 F.3d at 615; see also M.C.L.A. § 600.904. Permitting this suit against the Bar Association would thus strip the Michigan Supreme Court and the State of Michigan of "the dignity that is consistent with their status as sovereign entities." See Fed. Mar. Comm'n, 535 U.S. at 760. Because the Bar Association is an "arm[] of the Michigan Supreme Court for all purposes relevant to this lawsuit," it is a "state agenc[y] immune from this lawsuit under the Eleventh Amendment." Dubuc, 342 F.3d at 615; see also Kish v. Mich. State Bd. of Law Exam'rs, 999 F. Supp. 958, 964 (E.D. Mich. 1998) (finding that the Michigan State Board of Law Examiners is a judicial agency of the state entitled to Eleventh Amendment immunity).

While other circuits differ slightly in how to determine whether an entity should receive Eleventh Amendment immunity, many have likewise concluded that state bar associations are immune from suit. See, e.g., Nichols v. Ala. State Bar, 815 F.3d 726, 731–33 (11th Cir. 2016); Broening Oberg Woods Wilson & Cass, P.C. v. State Bar of Nev., 172 F.3d 875 (9th Cir. 1999); Thiel v. State Bar of Wisc., 94 F.3d 399, 401–02 (7th Cir. 1996); Krempp v. Dobbs, 775 F.2d 1319, 1321 (5th Cir. 1985); see also Doyle v. Okla. Bar Ass'n, 787 F. Supp. 189 (W.D. Okla. 1992), judgment aff'd, 998 F.2d 1559 (10th Cir. 1993). The result can be no different here.

The Court will, accordingly, dismiss all claims against the Michigan State Bar.

B.  Secretary of Education

"[T]he United States may not be sued without its consent" and that "consent is a prerequisite to jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). Unless a plaintiff identifies an express waiver of this sovereign immunity, the federal government and its agencies may not be sued. FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. King, 395 U.S. 1, 4 (1969) (a waiver of sovereign immunity "must be unequivocally expressed"). Kanam contends that three different statutes authorize this suit and thus contain such a waiver: (1) Title VI of the Civil Rights Act of 1964; (2) the Administrative Procedures Act ("APA");[3] and (3) the Declaratory Judgment Act. Compl. 2; Pl.'s Opp'n 2. He is mistaken on all counts.

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation, in be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Kanam argues that this language expressly waives sovereign immunity by providing a private right of action to prevent an agency from allocating federal funds to an entity engaged in discriminatory practices. But Title VI provides no such cause of action. Generally, private plaintiffs may only use Title VI "to sue a discriminatory fund recipient to terminate the offending discrimination;" they may not sue "the enforcing agency."[4]  Washington Legal Found. v. Alexander, 778 F. Supp. 67, 69 (D.D.C. 1991). Title VI, therefore, does not provide Kanam a

---

[3] Despite being raised for the first time in his opposition to the Secretary's motion to dismiss, the Court will consider Kanam's APA arguments.

[4] A plaintiff may in rare cases sue a funding agency under Title VI where the agency has "consciously and expressly adopted a policy [abdicating] its statutory duty" by continuing to fund discriminatory educational institutions. See Adams v. Richardson, 480 F.2d 1159, 1162 (D.C. Cir. 1973). Even under the generous standards afforded *pro se* litigants, Kanam has not alleged that the Department of Education has adopted any such policy.

claim against the Secretary and consequently does not constitute a waiver of sovereign immunity.  See Dorsey v. Dep't of Labor, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (holding that Title VI does not waive sovereign immunity against the federal government).

Kanam looks next to the APA, but the D.C. Circuit has foreclosed this path.  While the APA provides a limited waiver of sovereign immunity for challenges to final agency action, 5 U.S.C. § 702, it only permits review of agency action "for which there is no other adequate remedy in a court," id. § 704.  In Washington Legal Foundation, the Circuit found that the ability to sue an alleged discriminatory institution (there, a college) directly was "not merely adequate but in fact the *proper* means for individuals to enforce Title VI," and thus held that there was no cause of action under the APA.  984 F.2d 483, 486 (D.C. Cir. 1993) (emphasis in original) (quoting Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990)); see also El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs., 396 F.3d 1265, 1271 (D.C. Cir. 2005) (explaining that the Circuit has "embraced the doctrinal view disfavoring suits against federal enforcement authorities administering anti-discrimination laws" when there are "remedies against the discriminating entity . . . adequate so as to preclude APA review").  Because Title VI provides an adequate remedy (the implied right of action against the allegedly discriminating institution), the APA does not provide the waiver of sovereign immunity Kanam seeks.

Lastly, Kanam identifies the Declaratory Judgment Act as a basis for jurisdiction, but it only "authorizes declaratory relief as a *remedy*."  28 U.S.C. § 2201 (emphasis added).  To obtain declaratory relief, the plaintiff must state a separate "cognizable cause of action."  Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011).  The Declaratory Judgment Act thus does not provide "an independent source of federal jurisdiction" or waive sovereign immunity.  Schilling

v. Rogers, 363 U.S. 666, 677 (1960); Walton v. Fed. Bureau of Prisons, 533 F. Supp. 2d 107, 114 (D.D.C. 2008).

Because Kanam has failed to locate an express waiver of sovereign immunity, the Court will also dismiss all claims against the Secretary of Education.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the Bar Association and the Secretary's Motions to Dismiss.  A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: July 8, 2020